1

2

3                                                                O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  NORTHROP GRUMMAN            )  Case No. CV 05-08444 DDP (PLAx)
    CORPORATION,               )
12                             )  **ORDER GRANTING PARTIAL SUMMARY**
                   Plaintiff,  )  **JUDGMENT**
13                             )
         v.                    )  [Motions filed on 2/11/2011]
14                             )
    FACTORY MUTUAL INSURANCE    )
15  COMPANY,                   )
                               )
16                 Defendants. )
                               )
17  _____ )

18

19       Presently before the court is Plaintiff Northrop Grumman

20  Corporation's ("Northrop"'s) Motion for Partial Summary Judgment

21  Regarding Exhaustion Issues (Dkt. No. 268) and Motion Regarding the

22  Burdens of Proof and of Going Forward With Respect to Establishing

23  Exhaustion of Primary Coverage (Dkt. No. 269).  Factory Mutual

24  Insurance Company ("Factory Mutual") opposes Northrop's motions and

25  has submitted a Motion for Partial Summary Judgment on Northrop's

26  Burden to Prove Exhaustion of the Underlying Primary Insurance

27  (Dkt. No. 270) and a Motion for Pretrial Ruling Regarding Proof of

28  Northrop's Non-Flood Damage. (Dkt. No. 266.)

After reviewing the papers submitted by the parties, considering the arguments therein, and hearing oral arguments, the court GRANTS Northrop's Motion for Partial Summary Judgment Regarding Exhaustion Issues in part and DENIES it in part; GRANTS Factory Mutual's Motion for Partial Summary Judgment on Northrop's Burden to Prove Exhaustion of the Underlying Primary Insurance in part and DENIES it in part; GRANTS Northrop's Motion Regarding the Burdens of Proof and of Going Forward With Respect to Establishing Exhaustion of Primary Coverage; and DENIES Factory Mutual's Motion for Pretrial Ruling Regarding Proof of Northrop's Non-Flood Damage.

**I.   Background**

Northrop is a global defense contractor.  Its Mississippi subsidiary, Northrop Grumman Ship Systems, is headquartered in Pascagoula, Mississippi.  Pascagoula is located on the Gulf of Mexico.  Northrop has operations throughout the Gulf area.  In August 2005, Hurricane Katrina hit the region and caused significant damage.  Northrop estimates that it has sustained almost $940 million in property damage and other loss as a result of the Hurricane.

For the April 1, 2005, to April 1, 2006, policy year, Northrop purchased approximately $20 billion in all risk property insurance. Northrop's 2005-2006 property insurance program consists of two layers.  The first layer consists of a $500 million layer of primary coverage (the "Primary Layer").  The Primary Layer is comprised of approximately 30 policies (the "Primary Policies"). Factory Mutual issued one of the Primary Layer's policies (the "Factory Mutual Primary Policy" or "Primary Policy").

The Factory Mutual Primary Policy is an "all risks" policy. The Primary Policy defines certain perils including "Earthquake" and "Flood." The Primary Policy include a Limits of Liability provision that limits certain coverages and perils to a lesser amount under the $500 million. For example, under the Primary Policies, there is a $400 million per occurrence sublimit applicable to property damage losses caused by the peril flood (the "Flood Sublimit").

The second layer is the excess layer (the "Excess Policy"). The Excess Policy is one all risks policy sold to Northrop by Factory Mutual. The Excess Policy provides approximately $20 billion worth of coverage for losses in excess of $500 million. The Excess Policy contains an exclusion for flood. The Limits of Liability provision in the Primary Layer states that the Excess Policy's $500 million attachment point is subject to the Excess of Loss provisions. The Excess of Loss provisions state that when a loss was caused by both covered and excluded losses, the Primary Policies are deemed to apply first to the excluded losses.

On November 4, 2005, Northrop filed suit against Factory Mutual in California state court, claiming coverage for water damage under the Excess Policy. Factory Mutual removed the case to this court, and the parties filed cross-motions for summary judgment on whether the flood exclusion in the Excess Policy barred coverage for storm surge damage from Hurricane Katrina. On August 16, 2007, this court entered partial summary judgment for Northrop, and on April 2, 2009, the Ninth Circuit reversed, holding that the Excess Policy's flood exclusion encompassed storm surge damage.

See <u>Northrop Grumman Corp. v. Factory Mut. Ins. Co.</u>, 563 F.3d 777, 788 (9th Cir. 2009).

Presently before the court are the parties cross-motions for summary adjudication. First, the parties dispute whether storm surge damage caused by a "Named Windstorm" is excluded by the Factory Mutual Primary Policy's Flood Sublimit. Second, the parties dispute whether time element loss caused by flood is excluded by the Factory Mutual Primary Policy's Flood Sublimit. Finally, the parties disagree as to which party has the burden of identifying the claimed losses that are excluded under the Excess Policy.

## II. Legal Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

4

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u> , 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." <u>Anderson</u>, 477 U.S. at 259. Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 325. The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. <u>Anderson</u>, 477 U.S. at 252. "Credibility determination, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when he or she] is ruling on a motion for summary judgment," <u>Id.</u> at 255.

Federal Rule of Evidence 201 permits a court to take judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

**III.      Discussion**

A. Exhaustion of the Primary Policy

In the first phase of this case's litigation, it was established that the Excess Policy's flood exclusion also excludes coverage for damage to Northrop's properties caused by Hurricane Katrina's storm surge. <u>Northrop Grumman</u>, 563 F.3d at 788.

Northrop now argues that the Primary Policy's Flood Sublimit does not apply to storm surge losses caused by a "Named Windstorm." (Pl.'s Motion for Partial Summary Judgment 1:10-11.) Northrop further contends that the Flood Sublimit does not include related "Time Element," e.g. business interruption, loss. Factory Mutual opposes both arguments.

    i. "Named Windstorm"

The Primary Policies provide Northrop with a $500 million primary layer of insurance coverage and have a $400 million sublimit for damage caused by flood. Northrop maintains that the Flood Sublimit does not apply to loss or damage caused by a "Named Windstorm," e.g. storm surge damage, because a "Named Windstorm" is a peril distinct from flood. (Pl.'s Motion for Partial Summary Judgment 11:13-15.) It follows, Northrop argues, that the Flood Sublimit does not apply, Northrop has exhausted the $500 million Primary Layer with "Named Windstorm" damages, and coverage under the Excess Policy is triggered. (Id. at 11:6-10.) Alternatively, Northrop argues that the Primary Policies' Priority of Payments provision entitles Northrop to treat its storm surge loss as "Named Windstorm" loss, even if such loss may also be characterized as flood loss. (Id. at 15:17-19.)

Although it is true that the Primary Policy defines an event called a "Named Windstorm," the court is not persuaded that "Named Windstorm" is a peril that is distinct from "Flood". Indeed, the Ninth Circuit previously consider and rejected Northrop's argument that the Primary Policy's mention and definition of "Named Windstorm" created coverage distinct from flood. (Factory Mutual's Mot. For Partial Summary Judgment 4:1-21, 5:5-7.) As the Ninth

Circuit explained, "Named Windstorm" is a <u>deductible</u> found in the
Primary Policy and not a peril or type of coverage:

> [I]t is of no import that the primary policy
> defined the term Named Windstorm and Wind
> and that those terms were not referenced in
> the excess policy . . . . [D]efining Named
> Windstorm and Wind in the primary policy did
> not create coverage . . . . Rather, a
> sensible reading of the primary policy
> suggests that the terms were defined to
> explain when the special Named Windstorm
> deductible would apply.

<u>Northrop Grumman,</u> 563 F.3d at 787.   A plain reading of the
Primary Policy makes clear that any distinction made between a
flood and a "Named Windstorm" applies only to a special, single
$10,000 deductible to damage arising out of a "Named Windstorm;"
and, there is no distinct category of coverage for damages caused
by a named windstorm.

　　　　Furthermore, because the Factory Mutual Primary Policy
contains a specified deductible for "Named Windstorm" it does not
necessarily follow that the Primary Policy created coverage for
"Named Windstorm" separate from flood coverage.  Accordingly,
Northrop's argument that the Priority of Payments provision of the
Primary Policy entitles Northrop to treat damage excluded as flood
losses as covered "Named Windstorm" losses, also fails.  As
discussed above, there is no separate peril or "bucket" of coverage
for a named windstorm.  Rather, "Named Windstorm," is a term used
to explain the application of a single deductible to all losses
(including, for example, wind and flood) occurring during a named
storm or hurricane and has no application under the Priority of
Payments provision.

In conclusion, accepting Northrop's interpretation of the policy would entail creating an entirely new category of coverage not present in Factory Mutual's Primary Policy. Therefore, Northrop's argument that the $400 million Flood Sublimit does not apply in this instance because the damage at issue was the result of a named windstorm fails.

### ii. Time Element Losses

Factory Mutual argues that the plain meaning of the Limits of Liability provision in the Primary Policy is that the Flood Sublimit applies to any loss or damage - whether it be direct property damage or consequential time element loss - arising from flood. (Def.'s Mot. For Partial Summary Judgment 8:3-6.)

The court disagrees. Because time element damages related to flood are covered by the policy and not excluded or limited, the court finds that time element damages related to or arising from flood are not included in the Flood Sublimit, which is applicable only to "physical loss or damage." (Primary Policy, Ex. 1A, p.54.)

In reaching this conclusion, the court relies above all else on a plain reading of the Primary Policy. Under California law, where the written provisions of an insurance policy are "clear and explicit" they govern. Palmer v. Truck Ins. Exchange, 988 P.2d 568, 572 (Cal. 1999); see also Griffin Dewatering Corp. v. Northern Ins. Co. of New York, 176 Cal. App. 4th 172, 204 (2009) (noting the import of a contract's plain language in its interpretation and citing related cases).

Here, by its terms, the Primary Policy encompasses a broad swath of coverage. Indeed, it covers "all risks" that are not excluded. Factory Mutual's Primary Policy states:

**5.  LOSS OR DAMAGE INSURED**
This policy insures against all risks of physical loss or damage to property, not otherwise excluded in this policy . . . .

(Primary Policy, Ex. 1A, p. 20.)  It is well settled that an insured under an all risks policy can "reasonably expect" coverage for all losses that are not clearly excluded or limited.  <u>MacKinnon v. Truck Ins. Exchange</u>, 73 P.3d 1205, 1213 (Cal. 2003).  The court proceeds to consider what risks the Primary Policy excludes.

In a section titled "Loss or Damage Excluded," the policy states that it excludes loss or damage caused by "hostile or warlike action," "terrorism," and "fraudulent or dishonest acts" among other perils.  (Primary Policy, Ex. 1A, p. 20-27.)  Some of the exclusions make mention of related time element loss.  For example, time element loss related to an act of terrorism is excluded.  None of the exclusions address flood, nor do they mention time element losses related to flood.  By the plain terms of the Primary Policy – and without more — neither flood nor time element loss caused by flood is excluded.

The Policy goes on to list specific categories of coverage. Under the heading "Coverage," the Factory Mutual Primary Policy states that it "insures the interest of the Insured [Northrop] in the following:" (1) "Real and Personal Property," (2) "Business Interruption - Gross Earnings," (3) "Business Interruption - Loss of Profits," (4) "Extra Expense," (5) "Accounts Receivable," (6) "Leashold Interest," (7) "Rental Value and Rental Income," (8) "Royalties," (9) and "Transit". (<u>Id.</u> 27-34.)

"Real and Personal Property" is defined in the policy as follows:

**A. REAL AND PERSONAL PROPERTY**
All real and personal property while such
property is anywhere within the territorial
limits of this policy, and located at an
Insured Location or while in due course of
transit which is owned, used, or acquired by
the Insured . . . .

(Primary Policy, Ex. 1A, p. 27.) "Business Interruption - Gross

Earnings" is defined in the policy as follows:

**B.    BUSINESS INTERRUPTION - GROSS EARNINGS**
1.    Loss due to the necessary interruption of
business conducted by the Insured including
all interdependencies between or among
companies owned or operated by the Insured
caused by physical loss or damage insured
herein during the term of this policy to real
and/or personal property . . . .

(Primary Policy, Ex. 1A, p. 28.)

By its own terms, the Primary Policy, therefore, expressly

insures "<u>loss</u> due to the necessary interruption of business . . .

<u>caused by physical loss or damage</u> . . . ." (Primary Policy, Ex.

1A, p. 28 (emphasis added).)  Such loss is a distinct type of loss

from "real and personal property" loss and distinguishable from any

precipitating physical loss or damage itself.  The court finds this

distinction important in considering what loss is included in the

Flood Sublimit at issue.  In particular, the court finds it

significant that the Flood Sublimit only refers to "physical loss

or damage" and does not — as it could and as the policy does in

defining business interruption loss — refer to loss <u>caused by</u>

physical loss or damage.

In addition to identifying exclusions and coverages, the

Primary Policy demarcates several limits of liability.  The Primary

Policy is unambiguous about the fact that Factory Mutual's

liability is subject to these listed limitations.  Important for

10

purposes of the present action, the "Limits of Liability" section includes a $400 million limit of liability as respects flood, i.e. the Flood Sublimit. (Primary Policy, Ex. 1A, p. 14.) That limitation states that it is "per occurrence and in the annual aggregate as respects flood." (Primary Policy, Ex. 1A, p. 14.) The parties' argument here boils down to a disagreement as to what is included in the term "flood." Factory Mutual maintains that flood necessarily includes all damage or loss arising from flood including time element. Northrop, on the other hand, contends that flood refers only to physical property loss caused by flood and does not include consequential damages caused by flood.

Because the "Limits of Liability" provision itself does not explain what type of loss is included in the Flood Sublimit, the court turns to the definition of "flood" in the policy itself.

"Flood" is defined in the Factory Mutual Primary Policy as follows:

> The policy insures physical loss or damage caused by flood. The term "physical loss or damage caused by flood" includes all physical loss or damage caused by or resulting from flood waters, rising waters, waves, tide or tidal water, surface waters, or the rising, overflowing, or breaking of boundaries of lakes, reservoirs, rivers, streams or other bodies of water, whether driven by wind or not, including spray and sewer back-up resulting from any of the foregoing, all regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, sprinkler leakage and explosion resulting from flood will not be considered loss caused by flood within the terms and conditions of this policy.

(Primary Policy, Ex. 1A, p. 54.) In short, the Primary Policy insures against "physical loss or damage" caused by flood. The

definition of "flood" could have said that it includes <u>non</u>-physical loss or "loss <u>caused</u> by physical loss or damage," as discussed above and used elsewhere in the Primary Policy. The Primary policy, however, does not state that it includes non-physical losses such as, e.g., time element or accounts receivable. The court must read the policy by its plain terms, and by the plain terms of the definition of flood, the term includes physical loss and is silent as to whether it includes related non-physical coverages.

In addition to the Flood Sublimit, the "Limits of Liability" section also includes a limit of liability for: "earthquake," "Automatic Coverage," "Accounts Receivable," and "fine arts" among other limits. (Primary Policy, Ex. 1A, p. 14-15.) These limits mix <u>perils</u>, e.g., "flood" and "earthquake," and <u>coverages</u>, e.g., "Accounts Receivable". Because the Primary Policy mixes perils and coverages, and some limits refer to perils and others to coverages, it is not evident that a limit for flood (a peril) would necessarily encompass time element loss caused by flood (a coverage). If that was the case, mention of "accounts receivable" would be redundant with respect to flood and earthquake – those limits would, by this reasoning, assume all related coverages including accounts receivable losses. Furthermore, the parties clearly understood how to set limits of liability for coverages, as demonstrated by the "Accounts Receivable" limit, and it must be imputed that they chose not to set a limit for time element loss, a loss that was expressly anticipated and covered by the Primary Policy.

The Primary Policy also sets a limit of liability for damage caused by terrorism. That limitation states that it is "per occurrence and in the annual aggregate for Property Damage and Time Element [], <u>combined</u> as respects Terrorism . . . ." (Primary Policy, Ex. 1A, p. 15 (emphasis added).) When the parties wished to impose a limit on a coverage, "time element," that related to a peril, "terrorism," the parties expressly included that limitation. Factory Mutual demonstrated that it anticipated liability for time element loss, as evidenced by the terrorism limit of liability; however, for reasons that the court need not speculate upon, Factory Mutual chose not to similarly include related time element loss in the general limitation of liability for the peril of flood. "[A]n insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage." <u>Fireman's Fund Ins. v. Atl. Richfield Co.</u>, 94 Cal. App. 4th 842, 852 (2001). In this case, with respect to the Flood Sublimit, Factory Mutual did not include limiting language, even though it did so within the same section for another peril.

In <u>Hewlett-Packard Co. v. Factory Mutual Insurance Co.</u>, Hewlett-Packard sought property damage and business interruption coverage under an all risks policy. 2007 WL 983990, at *3 (S.D.N.Y. March 30, 2007). The policy at issue included a list of sublimits for various coverages, some of which included both property and time element losses and some of which were silent on the question. The court rejected an argument that one such sublimit included time element loss, reasoning that: "Since there are these specific references to the sublimits as applying to 'time

element,' it is natural to read any item that does <u>not</u> include such reference as not imposing a sublimit on the 'time element.'" <u>Id.</u> The same logic applies here, and the court declines to read language into the Flood Sublimit that was available and sophisticated parties chose not to employ.

Factory Mutual argues that this comparison to time element loss from flood related to terrorism is inapposite because the limitation for terrorism is an outlier. The court is not persuaded by this argument. Rather, the court finds it significant that the Primary Policy was drafted and signed by sophisticated parties. Nowhere within the four corners of the policy does the policy itself state that terrorism is in any way a distinct form of peril that is to be considered and treated differently than other perils.

Time element loss is a coverage that is not only not excluded, it is expressly and decidedly anticipated and included. The only basis that Factory Mutual offers for the exclusion of Northrop's flood related time element losses is that such loss is to be <u>automatically</u> grouped with flood under the Flood Sublimit. There is no language in the policy, however, stating that the Flood Sublimit includes related time element losses.

As a threshold matter, the court notes that there is nothing in the structure of the policy that makes it somehow inherent that a particular sublimit for a category of loss, e.g., physical damage to a building caused by a flood, should necessarily apply to another type of damage, e.g., business interruption loss also caused by the same flood. Indeed, insurance provisions exist to mitigate losses. These loses may be of differing kinds, and both the insurer and insured are free to formulate a policy so that

14

there are differing limits of coverage.  The present policy
distinguishes between perils and coverages and sets particular
limits of liability for each.  Such a contract has the potential to
protect the parties from the reality that physical loss and damage
may differ in amount and degree from any related business
interruption loss.  For example, a building may cost a relatively
small amount to replace, but the loss of that building for even a
short period of time may result in the loss of valuable long-term
contracts.  Or, a building may be expensive to replace, but because
of the timing or degree of the damage, there may only be minimal
business interruptions.  In other words, there may be sound reasons
to insure physical loss and business or time element losses
differently.

        Here, the contract's definition of "flood" makes no mention of
any related economic loss, whereas other liability sublimits
identify and expressly include time element loss.  Therefore, any
intent on Factory Mutual's part to include corresponding time
element loss in the Flood Sublimit was not clear.  At best, Factory
Mutual is correct that the contract is ambiguous whether "physical
loss or damage," for purposes of the Flood Sublimit, means physical
loss and physical damage or, rather, physical loss and non-physical
damage arising from flood.  Absent a clear resolution of the
ambiguity in the contract, the court must construe the ambiguity in
favor of coverage.  See MacKinnon, 73 P.3d at 1207.

        At worst, Factory Mutual's argument is directly contradicted
by an ordinary reading of the definition of "flood" and a simple
comparison between the Flood Sublimit and the Terrorism Sublimit.
In interpreting an insurance policy, this court must "give effect

to every part of the policy with each clause helping to interpret the other." <u>Palmer</u>, 988 P. 2d at 573. Provisions within an insurance policy are generally to be interpreted broadly "to afford the greatest possible protection," while exclusions or provisions that limit coverage are generally "interpreted narrowly against the insurer." <u>MacKinnon</u>, 73 P.3d at 1213 (citation and internal quotation marks omitted). These contract interpretation rules apply with "particular force" to policies such as those at issue in the present matter that are "all risks" policies and cover all "risks of physical loss except those excluded under the terms of the insuring contract." <u>Benavides v. State Farm Gen. Ins. Co.</u>, 136 Cal. App. 4th 1241, 1247 (2006).

An examination of the ordinary and plain meaning of Factory Mutual's Primary Policy reveals that there is no language regarding time element loss in the discussion of the Flood Sublimit. Any desire to include time element losses in the sublimit was not "conspicuous, plain [or] clear." <u>MacKinnon</u>, 73 P.3d at 1208. When the policy sought to distinguish between brick and mortar losses, e.g., property loss and damage, and additional losses arising there from, e.g., time element losses, the contract did so. Finally, reading the Flood Sublimit in the context of the other sublimits demonstrates that Factory Mutual could, and did, signify when it wished to include related time element loss in a liability limit, and that the insurer did not do so with respect to the Flood Sublimit.

For the above reasons, Northrop is entitled to summary judgment in its favor on this question.

B. Burden of Proof

The parties dispute (1) which party has the burden of identifying the claimed losses that are excluded under the Excess Policy, and (2) whether Northrop must identify its claimed losses as being caused by a particular peril or coverage. The court addresses the two points of contention in turn.

    i.  Excluded losses

Factory Mutual argues that Northrop is obligated to prove exhaustion of the Primary Policies before it can bring a claim under the Excess Policy and before Factory Mutual affirmatively identifies any exclusions from the excess coverage. Northrop, on the other hand, argues that it has made a prima facie showing of damages above the $500 million attachment point for the Excess Policy, and therefore Factory Mutual has the burden going forward to identify exclusions from the Excess Policy.

Because, under the Excess Policy's Excess of Loss Provision, the Primary Policies apply first to those coverages or perils excluded by the Excess Policy, the court concludes that Factory Mutual has the burden of proof and of going forward. Factory Mutual must identify the claimed damages that are excluded from coverage under the Excess Policy.

As a general rule, absent a controlling policy provision, in order to trigger an excess insurer's duty to pay, the duty ordinarily lies with the insured to establish proof of a primary policy's exhaustion. See Legacy Vulcan Corp. v. Superior Court, 185 Cal. App. 677, 686 (2010); see also Qualcomm, Inc. v. Certain Underwriters at Lloyd's, 161 Cal. App. 4th 184, 194 (2008) (explaining that "excess" insurance "liability only attaches after a predetermined amount of primary coverage has been exhausted").

In this case, the parties agree that the Excess Policy is in excess of the Primary Policies.  That is, the Excess Policy applies to coverage above and beyond the $500 million primary layer of coverage.  As the Excess Policy states:

> **6. LIMITS OF LIABILITY**
> The Company's maximum limit of liability in a single occurrence regardless of the number of Locations or coverages involved will not exceed the Policy limit of liability of USD19,834,413,000 <u>excess of USD500,000,000</u>, subject to the EXCESS OF LOSS PROVISIONS of this Policy . . . .

(Excess Policy, Ex. 1B, p. 66(emphasis added)).

Here, however, an applicable policy provision — the Excess of Loss Provision — and not the general rule regarding burden to establish exhaustion of a primary policy controls.  The Limits of Liability provision is unequivocally "subject to the Excess of Loss Provisions," and the Excess of Loss Provisions makes clear that where more than one coverage applies, the Primary Policies apply first to those coverages or perils not insured by the Excess Policy:

> **9.  EXCESS OF LOSS PROVISION**
> As respects all coverages, except Boiler and Machinery, this Policy shall apply excess of the amount(s) shown under the LIMITS OF LIABILITY after application of the deductibles applying in the underlying (primary) policy(ies), but only for such losses which are covered and not excluded by the terms and conditions of this Policy.  All losses, damages or expenses arising out of any one occurrence shall be adjusted as one loss.
>
> <u>In the event loss or damage involves more than one coverage or peril, the coverage provided under any underlying policies shall apply first to the coverage(s) or peril(s) not insured by this Policy</u>.  Upon exhaustion of the limits of liability of the underlying policies, this Policy shall then be liable for the loss uncollected from the coverage(s) or

18

peril(s) insured hereunder subject to the
limit of liability.

(Excess Policy, Ex. 1B, p. 104 (emphasis added)).

Here, put simply, the Excess Policy states that the Primary Policy will apply first to those damages excluded under the Excess Policy. Therefore, before Northrop can possibly exhaust the Primary Policy, Factory Mutual must identify exclusions to the Excess Policy. The Excess Policy itself requires that any exclusions be identified as a condition precedent to exhaustion of the Primary Policies.

To require exhaustion of the Primary Policies prior to any identification by Factory Mutual of exclusions under the Excess Policy would directly contradict the terms of the Excess Policy. See AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 820-22 (2003) (explaining that "the mutual intention of the parties at the time the contract is formed governs interpretation," and such intention is to be inferred, if possible, "solely from the written provisions of the contract").

Northrop has submitted a claim that it suffered a loss in excess of the Excess Policy's $500 million attachment point. Indeed, Northrop claims losses in excess of $939 million. Accordingly, under the terms of the Limits of Liability and the Excess of Loss provisions – but only if Northrop has complied with the "Requirements in Case of Loss" – the burden now shifts to Factory Mutual to prove which losses are excluded by its Excess Policy.

      ii. Northrop's Requirements in Case of Loss

Factory Mutual next argues that pursuant to the "Requirements in Case of Loss," Northrop must submit a revised proof of loss that does not include excluded losses. Specifically, Factory Mutual requests that this court issue an order "requiring Northrop to submit and prove the portion of its loss that it contends is attributable to wind or other non-flood damage from Hurricane Katrina." (Factory Mutual's Mot. For Pretrial Ruling 4:15-16, 5:1.) In response, Northrop argues that it has complied with its duties under the Excess Policy and that those duties do not include, as Factory Mutual argues, the duty to itemize its losses by the precipitating peril or applicable coverage. (Northrop's Supplemental Memorandum 11:16-20.)

Having considered the parties' arguments and studied the terms of the Excess Policy and Primary Policy, the court concludes that Northrop has complied with the requirements in case of loss under the Excess Policy. Contrary to the argument set forth by Factory Mutual here, Northrop is not required to revise its proof of loss so that it identifies specific perils or related coverages.

The court's conclusion is based on the plain terms of the Excess Policy. In the case of loss, the Excess Policy requires that the insured provide a proof of loss, which includes particular information. The details of that requirement are set forth in the Excess Policy:

> **A. REQUIREMENTS IN CASE OF LOSS**
> The insured will:
> ....
> 4) give a signed and sworn proof of loss to the Company within 90 days after the loss, unless that time is extended in writing by the company. The proof of loss must state the knowledge and belief of the Insured as to:
> a) the time and <u>origin</u> of the loss.

20

1          b) the Insured's interest and that of all
others in the property.
2          c) the Actual Cash Value and replacement
value of each item and the amount of loss to
3    each item; all encumbrances; and all other
contracts of insurance, whether valid or
4    not, covering any property.
      d)any changes in the title, use, occupation,
5    location, possession or exposures of the
property since the effective date of this
6    Policy.
      e) by whom and for what purposes any
7    location insured by this Policy was occupied
on the date of loss, and whether or not it
8    then stood on leased ground.

9    (Excess Policy, Ex. 1B, p. 93-94 (emphasis added).)

10        In October 2008 and later in June 2009, Northrop provided

11    Factory Mutual with a proof of loss that claimed approximately $940

12    million in loss. (Northrop's Supplemental Memorandum 17:5-8.) The

13    proof of loss identified Hurricane Katrina as the "origin" of loss.

14    (Factor Mutual's Supplemental Brief Re Proof of Northrop's Non-

15    Flood Damage 7: 19-25.) Factory Mutual argues that the requirement

16    that Northrop state the "origin" of the loss mandates that Northrop

17    identify the peril that caused any claimed loss. (Id.)

18        The court does not find support for Factory Mutual's proposed

19    interpretation of "origin" in the Excess Policy. The Excess Policy

20    has a detailed description of specific exclusions and coverages,

21    and similar to the Primary Policy, the Excess Policy divides loss

22    by "perils," e.g. flood and earth movement, and "coverages," e.g.

23    real property and time element loss. If the Excess Policy wanted

24    that level of specificity in the proof of loss, the Policy should

25    have required that level of specificity. For example, the Excess

26    Policy does not say and could have said that Northrop must identify

27    the "time and peril," nor does it say that Northrop must identify

28

the "time and coverage" in its proof of loss.  Instead, the Excess
Policy requires that the insured list the "origin" of the loss.

The term "origin" is a general term, and the contract does not
give it a special meaning.  The term is defined by Merriam-Webster
Dictionary as "**1.** ancestry, parentage.  **2.** a:  rise, beginning, or
derivation from a source.  b: the point at which something begins
or rises or from which it derives."  Merriam-Webster,
http://www.merriam-webster.com/dictionary/origin (last visited July
26, 2011).  The first definition is not particularly applicable
here, but the second is.  Hurricane Katrina was the "beginning" and
"rise" and "source" of the loss at issue.  Hurricane Katrina was
also "the point at which something begins or rises or from which it
derives."  Id.  By identifying Hurricane Katrina as the "origin" of
their claimed loss, Northrop distinguished the damage claimed in
this matter from, for example, a fire or a flood on a different
date.

In Strubble, the California Court of Appeal considered a
similar factual situation, and a comparison to that case is helpful
here.  Strubble v. United Services Auto. Assn., 35 Cal. App. 3d
498, 504-5 (1973).  In Strubble, the Court of Appeal addressed an
"all-risks" policy, which included the peril of earthquake but had
a specific exclusion for earth movement.  Id.  The court held that
the "defendant insurer, in order to establish its defense of
noncoverage of its policy, had the burden of proving that
plaintiffs' loss was proximately caused by the excluded peril of
earth movement other than earthquake (an included peril)."  Id.
The court reasoned that because the policy at issue was an "all

risks" policy, the insurer had the burden to prove the proximate
cause of plaintiffs' loss.  Id. at 504.

Here, as in Strubble, "[t]he policy is an 'all-risks' policy,"
and "not a specific peril policy, such as a policy of fire and
lightening insurance."  Id.  If it were the later type of policy
and the specific peril covered by the policy had been wind, then
Northrop would have had the burden of proving that wind proximately
caused the ensuing damage.  But, here, Factory Mutual insured
Northrop against all risks of physical loss, subject only to
certain specific exclusions.  Therefore, "the insured [i.e.
Northrop] does not have to prove that the peril proximately causing
his loss was covered by the policy."  Id.; see also Travelers Cas.
& Sur. Co. v. Superior Court, 63 Cal. App. 4th 1440, 1455 (1998)
(explaining in dicta that the Strubble court held that an insured
who makes a claim under an all-risks policy "has no burden of
proof" because "there is a presumption of coverage, which the
insurer has the burden to rebut"); Leprino Foods Co. v. Factory
Mut. Ins. Co., 453 F.3d 1281, 1287 (10th Cir. 2006) (holding that,
under an all risks policy, once the insured demonstrates a loss of
property covered by the policy, the insurance carrier has the
burden of proving that the proximate cause of loss was excluded).
The very general requirement that Northrop identify the "time and
origin of loss" does not alter the burdens here.

Factory Mutual further argues that the Ninth Circuit's prior
opinion in this action, which held that storm surge loss was
excluded under the Excess Policy, requires Northrop to revise its
proof of loss to exclude storm surge.  (Factory Mutual's
Supplemental Brief RE Ruling Regarding Proof of Northrop's Non-

23

Flood Damage 11: 14-18.)  Contrary to Factory Mutual's argument,
the Ninth Circuit's holding did not change, or even address,
Factory Mutual's burden of proof.  Rather, the Court clarified a
point of contention, which going forward, will assist Factory
Mutual and conserve judicial resources as Factory Mutual proceeds
to identify excluded losses.

As another alternative basis for burden shifting, Factory
Mutual argues that Northrop's refusal to excise flood losses from
its claim is in violation of the general duty to cooperate under
California law.  (Factory Mutual's Memo. of Points and Auth. in
Support of its Mot. For Pretrial Ruling Regarding Proof of
Northrop's Non-Flood Damage 8:8.)  Under California law, it is
permissible for an insurer to deny a claim if the insured fails to
cooperate with the insurer's investigation of loss, including
failing to submit a completed proof of loss and failing to produce
requested information.  See Abdelhamid v. Fire Ins. Exchange, 182
Cal. App. 4th 990 (Cal. Ct. App. 2010); Othman v. Globe Indem. Co.,
759 F.2d 1458 (9th Cir. 1985).  Here, Northrop did submit a proof
of loss.  The subsequent litigation, which clarified that storm
surge damage must be included in total flood damages and therefore
cannot exhaust the Primary Policy above and beyond the $400 million
Flood Sublimit, does not retrospectively alter Northrop's
requirements with respect to its proof of loss.

Northrop is entitled to summary judgment in its favor on this
issue.

**IV.  Conclusion**

For the reasons stated above, the court GRANTS Northrop's
Motion for Partial Summary Judgment Regarding Exhaustion Issues in

part and DENIES it in part; GRANTS Factory Mutual's Motion for Partial Summary Judgment on Northrop's Burden to Prove Exhaustion of the Underlying Primary Insurance in part and DENIES it in part; GRANTS Northrop's Motion Regarding the Burdens of Proof and of Going Forward With Respect to Establishing Exhaustion of Primary Coverage; and DENIES Factory Mutual's Motion for Pretrial Ruling Regarding Proof of Northrop's Non-Flood Damage.


IT IS SO ORDERED.


Dated: July 27, 2011

DEAN D. PREGERSON
United States District Judge