O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NORTHROP GRUMMAN CORPORATION, | ) ) | Case No. CV 05-08444 DDP (PLAx) |
| Plaintiff, | ) ) ) | **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO NORTHROP GRUMMAN'S THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH, AND NINTH CAUSES OF ACTION** |
| v. | ) ) ) | |
| FACTORY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | [Motion filed on April 29, 2011] |
| _____ | ) ) | |

Presently before the court is Factory Mutual Insurance Company's ("Factory Mutual"'s) Motion for Partial Summary Judgment on Northrop Grumman Corporation's ("Northrop"'s) Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action. (Dkt. No. 289.) After reviewing the materials submitted by the parties, considering the arguments therein, and hearing oral argument, the court GRANTS Defendants' motion and adopts the following order.

**I. Background**

For the April 1, 2005, to April 1, 2006, policy year, Northrop purchased approximately $20 billion in all risk property insurance. During this period, Aon Risk Services, Inc. of Southern California

Insurance Services ("Aon") represented Northrop in the insurance marketplace.

In preparation for the renewal of Northrop's insurance for the 2005-06 coverage year, Aon prepared a binder of materials entitled "Underwriting Detail" for consideration by Northrop and the other potential insurers. (Compl. ¶ 17.) The Underwriting Detail included a review of Northrop's objectives, probable loss scenarios, risk assessments by Factory Mutual, and location information. (Id.) The Underwriting Detail identified Northrop's "Renewal Objectives" as including protection against catastrophic earthquake, flood, and wind damage, and the Underwriting Detail defined "storm surge" as "[q]uickly rising ocean water levels associated with windstorms . . . ." (Compl. ¶ 17a-d.)

Ultimately, Northrop's 2005-2006 property insurance program consisted of two layers. The first layer provided for $500 million of primary coverage (the "Primary Layer"). The Primary Layer was comprised of approximately 30 policies. Factory Mutual issued one of the Primary Layer's policies (the "Factory Mutual Primary Policy" or "Primary Policy"). The second layer was the excess layer (the "Excess Policy"). The Excess Policy was one all risk policy sold to Northrop by Factory Mutual. The Excess Policy provided for approximately $20 billion worth of coverage for losses in excess of $500 million. The Excess Policy contained an exclusion for flood damage (the "Flood Exclusion").

In August 2005, Hurricane Katrina hit the Gulf Coast and caused significant damage to Northrop properties. Northrop estimates that it has sustained almost $940 million in property damage and other loss as a result of the Hurricane.

On November 4, 2005, Northrop filed suit against Factory Mutual in California state court, claiming coverage for "storm surge" damage under the Excess Policy. Factory Mutual removed the case to this court, and the parties filed cross-motions for summary judgment on whether the Excess Policy's Flood Exclusion barred coverage for storm surge damage from Hurricane Katrina. On August 16, 2007, this court entered partial summary judgment for Northrop, and on April 2, 2009, the Ninth Circuit reversed, holding that the Excess Policy's Flood Exclusion encompassed storm surge damage. See Northrop Grumman Corp. v. Factory Mut. Ins. Co., 563 F.3d 777, 788 (9th Cir. 2009). Specifically, the court concluded that "the plain language of the Flood Exclusion unambiguously bars coverage for the water damage [i.e. storm surge damage] to Northrop's shipyards." Id. at 784.

Presently before the court is Factory Mutual's Motion for Partial Summary Judgment as to Northrop's Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action. Northrop opposes the motion.

**II. Legal Standard**

Summary judgment and summary adjudication are appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences

3

are to be drawn in its favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." <u>Anderson</u>, 477 U.S. at 259. Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 325. The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. <u>Anderson</u>, 477 U.S. at 252.

**III. Discussion**

Factory Mutual moves this court for summary adjudication in its favor of Northrop's Third Cause of Action for tortious breach of the implied covenant of good faith and fair dealing; Fourth Cause of Action for fraud based upon an alleged promise made without intent to perform; Fifth Cause of Action for fraud based on misrepresentation; Sixth Cause of Action for fraud based upon concealment; Seventh Cause of Action for negligent misrepresentation; and Eight and Ninth Causes of Action for

reformation based upon fraud and mistake.  The court considers the causes of action in turn.

### A. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

Following Hurricane Katrina, Factory Mutual informed Northrop that the insurer was taking the position that the damage caused by the Hurricane was attributable to the two separate perils of flood and wind, and that flood damage, which is excluded under the Excess Policy, includes storm surge and flood-related time element loss. (Compl. ¶ 53.) Northrop contests Factory Mutual's interpretation of the Excess Policy.  Northrop contends that <u>all</u> damage arising from a Named Windstorm is covered by the Excess Policy, including storm surge and flood-related time element loss.  Accordingly, Northrop argues that Factory Mutual has withheld coverage benefits in bad faith, thereby committing the tort of breach of the implied covenant of good faith and fair dealing.  (Compl. ¶ 71.)  Northrop seeks to recover punitive damages.

In California, "[i]n addition to the right to sue an insurer in contract, if the insurer acts unreasonably and without proper cause in failing to investigate a claim, refusing to provide a defense, or either delaying or failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing." <u>Richards v. Sequoia Ins. Co.</u>, 195 Cal. App. 4th 431, 438 (2011) (citing <u>Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.</u>, 130 Cal. App. 4th 1078, 1093 (2005)). To recover on Northrop's cause of action for breach of the implied covenant of good faith and fair dealing, Northrop must establish both that benefits were withheld and that such withholding was

unreasonable or without proper cause.  See Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990).

Factory Mutual argues that because its denial of storm surge related damages was found by the Ninth Circuit to be correct, such denial was not unreasonable as a matter of law.  That is, Factory Mutual cannot have withheld benefits in bad faith that were never due.  The court agrees.  While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence.  Paulfrey v. Blue Chip Stamps 150 Cal. App. 3d 187, 196 (1983).  Where benefits are withheld for proper cause, there is no breach of the implied covenant.  California Shoppers Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 54-55 (1985).  For these reasons, the court grants Factory Mutual summary judgment on Northrop's Third Cause of Action as respects storm surge benefits.

Northrop also asserts a claim for bad faith based on Factory Mutual's failure to pay Northrop's business interruption losses. Coverage of Northrop's flood-related business interruption damages has been disputed by the parties and was, as the court explained in its July 27, 2011 Order, ambiguous.  Where a contract is ambiguous, Northrop had the duty to seek clarification at the time of entering and agreeing to the policy.  Under the facts of this case, failure to seek clarification at the time of signing resulted in a surviving ambiguity and a concomitant forfeiture of the right to seek bad faith damages.

The duty imposed by law is not to <u>unreasonably</u> withhold payments due under the policy.  See Neal v. Farmers Ins. Exchange,

6

21 Cal.3d 910, 920 (1978).  Without more, "the mistaken [or erroneous] withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability, . . . does not expose the insurer to bad faith liability." <u>Tomaselli v. Transamerica Ins. Co.</u>, 25 Cal. App. 4th 1269, 1280-1281 (1994). Because there was a genuine dispute as to whether Northrop was entitled to flood-related time element damages, Factory Mutual's withholding of these claimed damages was neither unreasonable nor without proper cause.  Factory Mutual is entitled to summary judgment in its favor on Northrop's Third Cause of Action for tortious breach of the implied covenant of good faith and fair dealing.

**B.  Misrepresentation-based causes of action**

Northrop's Fourth, Fifth, Sixth, and Seventh Causes of Action assert claims for promissory fraud, intentional misrepresentation, concealment, and negligent misrepresentation respectively. (Compl. ¶¶ 72-102.)  Factory Mutual contends that it is entitled to summary judgment on these causes action because (1) the plain language of the contract excluded coverage for storm surge damage and (2) Northrop has not alleged a material misrepresentation made by Factory Mutual or justifiable reliance.  (Factory Mutual's Reply 11: 15-23.)

The elements of a claim for the fraud of intentional misrepresentation are a misrepresentation, made with knowledge of its falsity (scienter) and with an intent to defraud or induce reliance, justifiable reliance, and resulting damage. <u>R&B Auto Center, Inc. v. Farmers Group, Inc.</u>, 140 Cal. App. 4th 327, 377 (2006).  A claim for negligent misrepresentation requires proof of

7

1  each of the same elements except, for purposes of establishing a
2  negligent misrepresentation, a defendant's honest belief in the
3  truth of the statement, without a reasonable ground for that
4  belief, is sufficient.  Id.; see also Orient Handel v. United
5  States Fid. & Guar. Co., 192 Cal. App. 3d 684, 693 (1987).
6       Promissory fraud is a subspecies of the action for fraud.
7  Behnke v. State Farm General Ins. Co., 196 Cal. App. 4th 1443, 1453
8  (2011).  "A promise to do something necessarily implies the
9  intention to perform; hence, where a promise is made without such
10 intention, there is an implied misrepresentation of fact that may
11 be actionable fraud."  Id.  The elements of promissory fraud are a
12 promise made regarding a material fact without any intention of
13 performing it; the existence of the intent not to perform at the
14 time the promise was made; intent to deceive or induce the promisee
15 to enter into a transaction; reasonable reliance by the promisee;
16 nonperformance by the party making the promise; and resulting
17 damage to the promise.  Id.
18      A tort claim for fraud and deceit based upon concealment
19 requires the plaintiff to plead and prove the following:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

Grayson Services, Inc. v. Wells Fargo Bank, — Cal. Rptr. 3d —, 2011
WL 4436470, at *18 (Cal. App. Sept. 26, 2011).

8

Each of the misrepresentation-based causes of action requires a <u>misrepresentation</u> and <u>reasonable reliance</u> thereupon.[1]  Here, Factory Mutual contends that Northrop has not – and cannot — established either a material misrepresentation by Factory Mutual or reasonable reliance on any such alleged misrepresentation by Northrop because the Excess Policy is unambiguous.  Factory Mutual relies on the Ninth Circuit's finding that "the plain language of the [Excess Policy's] Flood Exclusion unambiguously bars coverage for the water damage [i.e. storm surge damage] to Northrop's shipyards," because "water damage [i.e. storm surge damage] . . . falls squarely within the ordinary and plain meaning of flood." <u>Northrop Grumman Corp.</u>, 563 F.3d at 784.  By Factory Mutual's reasoning, any claim of fraud is defeated by the Ninth Circuit's finding that the contract was unambiguous.

Northrop disagrees.  Northrop contends that the Ninth Circuit did not consider extrinsic evidence, but rather, limited its review to the Excess Policy and whether the Policy's terms were clear. Northrop argues that — for purposes of a fraud analysis — this court may now consider the course of dealing and extrinsic communications between the parties, which Northrop avers resulted in a shared and alternate understanding of the terms of the contract.  Northrop maintains that it reasonably relied on its extrinsic communications with Factory Mutual and that, accordingly, it justifiably expected that all damage from a Named Windstorm,

---

[1] Except the tort of concealment, which requires a showing of a misrepresentation but does not appear to require reasonable reliance. <u>Grayson Services, Inc.</u>, 2011 WL 4436470 at *18.  Instead, the tort of concealment requires that the plaintiff establish that the defendant had a special duty to disclose the concealed information to the plaintiff. <u>Id.</u>

9

1  including storm surge damage, would be covered by the Excess
2  Policy.
3      In support of Northrop's position that the Ninth Circuit's
4  prior ruling does not necessarily foreclose Northrop's bad faith
5  claim, Northrop relies on Hackethal v. National Casualty Company,
6  189 Cal. App. 3d 1102, (1987).  In Hackethal, the California Court
7  of Appeal concluded that the terms of the contract in that case
8  were unambiguous but nonetheless went on to consider whether the
9  defendant "may be held liable for fraud as a result of alleged
10 misrepresentations" made to the plaintiff.  Id. 189 Cal. App. 3d at
11 1111.  The Hackenthal court ultimately concluded that the plaintiff
12 had not demonstrated any material misrepresentations by the insurer
13 and, therefore, could not establish either a fraudulent
14 misrepresentation or reasonable reliance thereupon.  Id.
15     This court could imagine that a course of events whereby two
16 parties agree to an insurance policy that is, on its face, clear;
17 nonetheless, the parties have reached a different, secret, agreed
18 upon alternate understanding of the terms of the agreement.  Here,
19 however, the court need not decide whether a plaintiff can sustain
20 a claim of fraudulent misrepresentation in the context of such an
21 unambiguous contract.  The court concludes that Northrop has not
22 plead sufficient facts to create a triable issue of fact that
23 Factory Mutual materially misrepresented the terms of the Excess
24 Policy.  Furthermore, any reliance on the alleged
25 misrepresentations was not justifiable, and therefore, Factory
26 Mutual is entitled to summary judgment on Northrop's causes of
27 action for fraud and negligent misrepresentation.
28

The heart of Northrop's fraud claims is that Factory Mutual misrepresented or concealed facts regarding the scope of the alleged "Named Windstorm" coverage. In particular, Northrop contends that:

> In selling the excess policy to Northrop, Factory represented that its primary and excess policies were "all risk" policies . . . [and] Factory never distinguished between the perils of "wind" and "flood" related to hurricanes or Named Windstorms, and never said that it could consider hurricanes and Named Windstorms as involving two separate perils – wind, which its excess policy would cover, and "flood," which its excess policy would not cover.

(Compl. ¶ 73.) Northrop further alleges that:

> Factory's policies also contain representations that they are "all risk" policies, that they cover losses from Gulf state hurricanes, that they cover "Named Windstorm," which includes "Named Windstorm" storm surges and wind-driven water, [and] that they do not exclude losses from Named Windstorms, storm surges, or wind-driven water . . . .

(Compl. ¶ 74.) Factory Mutual made these representations, Northrop maintains, "knowing that they were false," and Northrop reasonably relied upon them. (Compl. ¶¶ 75, 77.)

Northrop's primary point of contention concerns the insured's understanding that it was purchasing a blanket or "all risk" coverage for the peril of "Named Windstorm." However, as the court explained in its July' 27, 2011 Order, Named Windstorm refers to a <u>deductible</u> found in the Primary Policy and not a peril or type of coverage in the either the Primary or Excess Policy. The court's conclusion was based on a plain reading of the terms of the policies.

11

Northrop's primary evidence in support of its alternate understanding of "Named Windstorm" is a March 2002 email between Robert Roach of Factory Mutual and Robert ("Bob") Hayes of Aon. That email, sent from Roach to Hayes, states that when Factory Mutual:

> refer[s] to excluding 'wind' and the 'wind' deductible . . . it is actually a Named Windstorm Deductible, that applies to wind and flood – anything related to a named windstorm. So if we went to either of these solutions, the coverage and/or deductible we are talking about would be the Named Windstorm deductible, applying to both wind and flood.

(Northrop's Opp'n, Ex. 15.) The Roach email, while confusing, does not by any measure clearly state that there is coverage for the peril "Named Windstorm." Indeed, it twice refers to a Named Windstorm <u>deductible</u>.

Northrop also claims reliance on a 2004 "Property Insurance Renewal Briefing," which was prepared by Aon and presented to Factory Mutual, and a 2001 "Engineering Risk Assessment" prepared by Factory Mutual. The Renewal Briefing booklet lists "Named Windstorm" under "Perils Insured" along with "Earthquake" and "Flood." (Fleishman Decl. ¶ 5, Ex. 11.) The Risk Assessment report lists Northrop's natural hazard exposures and includes, among the list, Windstorms. (Northrop Opp'n, Ex. 14.) The Risk Assessment also explains that the "severity" of damage from "wind" is "based . . . [on] exposure to storm surge, and other factors." (<u>Id.</u>)

The court is not persuaded that either of these documents could amount to a material misrepresentation by Factory Mutual as to the Excess Policy's coverage. The Policy itself, as the court

12

has explained before, unambiguously considers Named Windstorm a deductible, not a coverage. Where a Renewal Briefing booklet prepared by Aon contradicts the clear terms of the policy, the terms of the policy govern, and Aon's understanding of Named Windstorm as a peril cannot, without more, amount to a misrepresentation by Factory Mutual. Accordingly, a statement in a 2001 Risk Assessment report that storm surge damage was wind-related does not create coverage, or a fraudulent representation thereof, for the peril of "Named Windstorm."

Finally, Northrop offers the 2005 Underwriting Detail, which was prepared by Aon and expresses Northrop's understanding that "storm surge estimates are included in our windstorm analyses unless mentioned otherwise." (Northrop Opp'n, Ex. 15.) Northrop notes that Factory Mutual objected to this definition of storm surge but did not offer any explanation for its objection. Northrop's reliance on Factory Mutual's silence, even if such silence did amount to a material misrepresentation, was not reasonable in light of the plain language of the contract, which excluded storm surge as flood. As a general rule, an insurer owes no specific duty to its insured to determine whether the coverage issued meets the insured's expectations. See, e.g., Gibson v. Gov. Employers Ins. Co., 162 Cal. App. 3d 441, 452 (1984); Schultz Steel Co. v. Hartford Acc. & Indem. Co., 187 Cal. App. 3d 513, 522 (1986).

Factory Mutual's decision to include storm surge as wind damage after the 1998 Hurricane Georges does not affect this independent policy.

In sum, Northrop has not provided or alleged facts to support a finding that Factory Mutual represented to Northrop that all damage from a Named Windstorm would be covered in the Excess Policy or that such damage would not be subject to the other terms of the Excess Policy, including the exclusion for flood. Accordingly, any belief on Northrop's part to the contrary – in the absence of a material misrepresentation and in light of the plain terms of the contract – was not reasonable.

It does not change the court's analysis whether Aon told Northrop that the Excess Policy would cover all damages caused by a Named Windstorm. (Northrop's Opp'n 6:8-19, 10:9-10). If Aon misrepresented the coverage, then Northrop's claim is more appropriately taken up with Aon. Northrop had an independent duty to read the express terms of the policy, or else, to suffer the consequences of relying on an intermediary agent. See, e.g., Hadland v. NN Investors Life Ins., 24 Cal. App. 4th 1578, 1588-89 (1994).

To the extent that Factory Mutual advised Northrop that the Excess Policy covered all risks except those excluded, the statement was neither fraudulent nor misleading since it was consistent with the coverage provided under the Excess Policy. The Policy itself states that "This Policy covers property, as described in this Policy, against ALL RISK OF PHYSICAL DAMAGE, except as hereinafter excluded." (Excess Policy, Ex. 1B, p. 60.) It is undisputed that Aon, acting as Northrop's agent for purposes of obtaining the Excess Policy, read the Policy. Nothrop, therefore, was on notice of the Policy's exclusions and coverages.

Factory Mutual is entitled to summary judgment on the misrepresentation-based causes of action.

**C.  Reformation**

Northrop's Eighth and Ninth Causes of Action seek reformation of the Excess Policy.  California Civil Code section 3399 articulates when a contract may be revised:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Cal. Civ. Code § 3399; see Am. Home Ins. Co. v. Travelers Indem. Co., 122 Cal. App. 3d 100, 964 (1981).  Because the court finds no evidence of fraud, mutual mistake, or knowledge by Factory Mutual of any mistake by Northrop in support of reformation of the Excess Policy, the court concludes that Factory Mutual is entitled to summary judgment on Northrop's Eighth and Ninth Causes of Action.

"In order to be entitled to reformation, a party must present clear and convincing evidence that the agreement as written does not express the true intention of the parties and that there was a mutual mistake."  Dictor v. David & Simon, Inc., 106 Cal. App. 4th 238, 253 (2003).  This standard requires a "finding of high probability" so that there is "no substantial doubt," a standard that is particularly difficult to satisfy where there is a written contract.  In re Angelia P., 28 Cal. 3d 908, 919 (1981).  A written contract is presumed to express the parties' intentions. Appalachian Ins. Co. v. McDonnel Douglas Corp., 214 Cal. App. 3d 1, 19 (1989).

Here, Northrop alleges that Factory Mutual failed to include coverage in the Excess Policy for storm surge, a coverage Northrop wanted to purchase. Without more, however, such a claim cannot support a claim for reformation.

A comparison with Taff is instructive. Taff v. Atlas Assurance Co. Ltd., 58 Cal. App. 2d 696 (1943). In Taff an insured and insurer disputed an exclusion, and the insured sought reformation to delete the exclusion. In denying that request, the Taff court explained:

> Where the insured alleges as a fact that the defendant did not issue a policy covering the particular risk which he claims to have specified, he must in an action for revision allege more than the neglect of the insurer to cover such risk and his own demand for such coverage. If the insurer does not grant the coverage applied for, the insured may reject the policy. However, the mere failure to issue the policy requested does not necessarily constitute fraud or actionable mistake. It must be alleged that defendant knew or should have known that plaintiff would not examine the policy or that defendant took affirmative action to prevent such examination.

Id. at 702.

Here, there were no facts pleaded showing that Factory Mutual knew or could have known that Northrop would not examine the Excess Policy when issued to it, nor are there allegations that Factory Mutual took affirmative action to prevent such examination.

Because there is no evidence to support a finding that Factory Mutual made false statement regarding the scope of the coverage provided, and the plain terms of the policy make clear that it is subject to exclusions, which include a flood exclusion, Factory Mutual is entitled to summary judgment on Northrop's Eighth Cause of Action for Reformation based on fraud. Furthermore, because

there is no evidence in the record to support a finding that Factory Mutual knew or suspected any unilateral mistaken understanding on the part of Northrop, the court grants Factory Mutual summary judgment as to Northrop's Ninth Cause of Action for reformation based on mistake.  See <u>Lemoge</u>, 46 Cal. 2d at 663 (explaining that when "one party to the contract is mistaken as to its provisions and his mistake is <u>known</u> or <u>suspected</u> by the other, the contract may be reformed to express a single intention entertained by both parties").

**IV.  Conclusion**

For the reasons stated above, the court GRANTS Factory Mutual's Motion for Partial Summary Judgment on Northrop Grumman's Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action.

IT IS SO ORDERED.


Dated: September 28, 2011

DEAN D. PREGERSON
United States District Judge